UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
RONDA NUNNALLY,                             )
                                            )
            Plaintiff,                      )
                                            )
      v.                                    )      Civil Action No. 08-1464 (PLF)
                                            )
DISTRICT OF COLUMBIA,                       )
                                            )
            Defendant.                      )
_____)

OPINION

This matter is before the Court on both parties' Objections to Magistrate Judge

Deborah A. Robinson's Report and Recommendation, issued on December 19, 2013.  Magistrate

Judge Robinson recommended that the Court grant defendant's motion for summary judgment

on a subset of plaintiff Ronda Nunnally's claims under Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. § 2000e et seq., the District of Columbia Human Rights Act ("DCHRA"),

D.C. CODE § 2-1401.01 et seq. (2012 Repl.), and the District of Columbia Whistleblower

Protection Act ("DCWPA"), D.C. CODE § 1-615.51 et seq. (2012 Repl.), but that it deny the

motion in all other respects.  Magistrate Judge Robinson further recommended that the Court

grant in part Nunnally's motion for sanctions against the District of Columbia associated with its

spoliation of evidence, grant Nunnally's request for an adverse inference and deny any further

sanctions.  Both parties filed written Objections.

After careful consideration of the parties' papers, the relevant legal authorities,

and the entire record in this case, the Court overrules almost all of the parties' Objections and

affirms Magistrate Judge Robinson's Report and Recommendation ("R&R") in almost all

respects.  The Court therefore affirms in part and reverses in part Magistrate Judge Robinson's

R&R, grants in part and denies in part the District of Columbia's motion for summary judgment,

and grants in part and denies in part Nunnally's motion for sanctions.[1]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Court fully adopts Magistrate Judge Robinson's thorough recitation of the

facts in her R&R, see R&R at 2-7, and recounts here only those facts necessary to clarify on

which claims Nunnally will be permitted to proceed to trial.[2]  In 2004, Nunnally was a

Lieutenant in the District of Columbia Metropolitan Police Department ("MPD"), serving in

MPD's Office of the Chief Information Officer.  Plaintiff's Statement of Additional Material

---

[1]    The papers considered in connection with the pending motions include:  Fourth Amended Complaint ("Am. Compl.") [Dkt. 55]; the District of Columbia's motion for summary judgment [Dkt. 98]; Nunnally's motion for sanctions [Dkt. 102]; the District of Columbia's opposition to Nunnally's motion for sanctions [Dkt. 108]; Nunnally's opposition to the District of Columbia's motion for summary judgment [Dkt. 109]; Nunnally's reply in support of her motion for sanctions [Dkt. 113]; the District of Columbia's reply in support of its motion for summary judgment [Dkt. 115]; Magistrate Judge Robinson's R&R [Dkt. 127]; the District of Columbia's Objections ("Def. Obj.") [Dkt. 130]; Nunnally's Objections ("Pl. Obj.") [Dkt. 131]; Nunnally's opposition to the District of Columbia's Objections [Dkt. 134]; the District of Columbia's opposition to Nunnally's Objections [Dkt. 135]; the District of Columbia's reply in support of its Objections [Dkt. 137]; and Nunnally's reply in support of her Objections [Dkt. 138].

[2]    The District of Columbia failed to provide with its summary judgment motion "a statement of material facts as to which the moving party contends there is no genuine issue" as Local Civil Rule 7(h)(1) requires, and Magistrate Judge Robinson therefore chose to rely entirely on Nunnally's statement of facts.  R&R at 2 n.1.  The District of Columbia's so-called statement of material facts affirmatively disputes how Nunnally frames the facts in her complaint, see, e.g., the District of Columbia's Statement of Additional Material Facts ("Defs. SMF") ¶¶ 18(c)(i), 18(d)(i), 18(e)(i), 19(a), 21(a), 22(a), 23(a), 25(a), 27(a), 28(a), 31(a) [Dkt. 98-2], and characterizes Nunnally's complaint as "alleg[ing]" certain facts.  See, e.g., id. at ¶ 12.  Magistrate Judge Robinson properly exercised her discretion to disregard this statement by the District of Columbia as noncompliant with Local Civil Rule 7(h)(1).  The Court therefore overrules the District of Columbia's Objection to the contrary.  See Husain v. Smith, No. 15-0708, 2016 WL 4435177, at *8 (D.D.C. Aug. 19, 2016) ("When a movant fails to provide this statement, the Court is not obligated to do the legwork for the moving party . . . .").

Facts ("Pl. SMF") ¶ 35 [Dkt. 109-1].  Nunnally filed a complaint with MPD alleging sexual harassment and discrimination on the basis of sex against her then-supervisor, Philip Graham. Id.  The claims in this case, however, stem only from the alleged retaliation against Nunnally in response to that and subsequent complaints of harassment and discrimination.  Importantly, Nunnally's claims are predicated not just upon retaliation in response to her sexual harassment complaint against Graham, but also on continued retaliation in response to her subsequent complaints about the conditions of her employment at MPD.  As noted, her retaliation claims are brought under Title VII of the Civil Rights Act of 1964, the DCHRA, and the DCWPA.

       The Court understands from Nunnally's Fourth Amended Complaint and her Statement of Additional Material Facts that she alleges the following 12 instances of retaliation or adverse employment action, in chronological order:  (1) her May 2005 assignment to a utility closet as an office, see Fourth Am. Compl. ¶ 29; Pl. SMF ¶ 43; (2) her November 2005 exclusion from MPD headquarters, see Fourth Am. Compl. ¶ 36; (3) being denied the opportunity to select her subordinates in May 2006, see Fourth Am. Compl. ¶ 37; Pl. SMF ¶ 81; (4) being denied the ability to supervise the MPD Electronic Surveillance Unit in January 2007, see Fourth Am. Compl. ¶ 47; Pl. SMF ¶ 87; (5) her reassignment to MPD's First District in January 2007; see Fourth Am. Compl. ¶ 47; Pl. SMF ¶ 89; (6) being required to report to the First District weekly while on sick leave in January 2007, see Fourth Am. Compl. ¶ 48; Pl. SMF ¶¶ 89-94; (7) the confiscation of her MPD vehicle in January 2007, see Fourth Am. Compl. ¶ 51; Pl. SMF ¶ 96; (8) the denial of her sick, annual, and family medical leave between 2007 and 2009, see Fourth Am. Compl. ¶ 60; Pl. SMF ¶ 121 (citing Pl. Opp. Summary Judgment at Ex. 7 ¶ 27 [Dkt. 109-9]); (9) her placement on AWOL status in July 2007, see Fourth Am. Compl. ¶ 61; (10) the delay of her workers' compensation and retirement board hearings between May 2007 and July 2008,

see Fourth Am. Compl. ¶¶ 25, 64, 66, 68; Pl. SMF ¶¶ 127, 129; (11) her forced retirement on

disability in June 2009, see Pl. SMF ¶ 129 (citing Pl. Opp. Summary Judgment at Ex. 57 [Dkt.

109-59]); and (12) MPD advising prospective employers after June 2009 that it had fired

Nunnally.  See Pl. SMF ¶ 128 (citing Pl. Opp. Summary Judgment at Ex. 7 ¶ 29 [Dkt. 109-9]).

       Magistrate Judge Robinson recommended granting summary judgment for the

District of Columbia on Nunnally's Title VII and DCHRA retaliation claims based on adverse

employment actions numbers 6 and 10, R&R at 21-23, but allowing Nunnally to proceed to trial

on all other claims.  In addition, Magistrate Judge Robinson limited the scope of Nunnally's

DCWPA claim to retaliation (1) that occurred after May 7, 2008, because of the DCWPA statute

of limitations, id. at 29, and (2) for claims after that date to those where the protected disclosures

were a contributing factor in the employer's adverse employment actions.  Id. at 31.[3]  Finally,

Magistrate Judge Robinson granted Nunnally's motion for discovery sanctions, finding that an

adverse inference was appropriate at trial because Nunnally had adduced sufficient evidence to

show that MPD failed to preserve potentially relevant email records and that MPD understood

that it had a duty to preserve records in anticipation of this litigation.  Id. at 37-38.  Magistrate

Judge Robinson left the specific form of the adverse inference instruction, if any, for this Court

to determine at the time of trial.  Id. at 39

---

     [3]     The result of Magistrate Judge Robinson's statute of limitations analysis is that
Nunnally's DCWPA claim is limited to adverse employment actions 8, 10, 11, and 12 listed
above because those are the only ones that occured after May 7, 2008.  While adverse
employment action 10 stretches to July 2008, Magistrate Judge Robinson had already
recommended granting summary judgment for the District of Columbia on that DCWPA theory
for lack of causation.  R&R at 21.

## II.  STANDARD OF REVIEW

A party may seek review of a magistrate judge's decision by filing an Objection pursuant to Rule 72 of the Federal Rules of Civil Procedure.  Both parties filed Objections to Magistrate Judge Robinson's R&R regarding (1) the District of Columbia's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, and (2) Nunnally's motion for sanctions.  Where, as here, a party files written objections to any part of a magistrate judge's R&R with respect to a dispositive matter, the Court considers de novo those portions of the recommendation to which objections have been made, and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  FED. R. CIV. P. 72(b)(3).  The Court therefore reviews the Objections related to the Magistrate Judge Robinson's resolution of the District of Columbia's motion for summary judgment de novo.

A magistrate judge's determination on a non-dispositive matter is entitled to "great deference," and the Court will set it aside only if it is "clearly erroneous or contrary to law."  FED. R. CIV. P. 72(a); see also LOC. CIV. R. 72.2(c); Beale v. District of Columbia, 545 F. Supp. 2d 8, 13 (D.D.C. 2008).  The district court reviews Objections to the magistrate judge's factual findings or discretionary decisions for clear error.  Am. Ctr. for Civil Justice v. Ambush, 794 F. Supp. 2d 123, 129 (D.D.C. 2011).  Under this standard, the Court will affirm the magistrate judge's factual findings or discretionary decisions unless the court "is left with the definite and firm conviction that a mistake has been committed."  Neuder v. Batelle Pac. Nw. Nat'l Lab., 194 F.R.D. 289, 292 (D.D.C. 2000) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 365 (1948)).  By contrast, the "contrary to law" standard requires the Court to review the magistrate judge's legal conclusions — including any asserted misapplication of the relevant

statutes, case law, and rules of procedure — de novo.  Intex. Rec. Corp. v. Team Worldwide

Corp., 42 F. Supp. 3d 80, 86 (D.D.C. 2013); see Am. Ctr. for Civil Justice v. Ambush, 794 F.

Supp. 2d at 129.

        The Court notes that, although Nunnally requested a default judgment sanction in

her motion, see Sanctions Mot. at 15 [Dkt. 102], such a request does not transform her non-

dispositive motion into a dispositive one because Magistrate Judge Robinson did not enter, or

recommend entering, a default judgment.  "The critical issue here is what sanction the magistrate

judge actually imposes, rather than the one requested by the party seeking sanctions."  CHARLES

ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, 12 FED. PRAC. & PROC. CIVIL § 3068.2

(2d ed. April 2016).  "Even though a movant requests a sanction that would be dispositive, if the

magistrate judge does not impose a dispositive sanction the order falls under Rule 72(a) rather

than Rule 72(b)."  Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1519-20 (10th Cir. 1995).

## III.  DISCUSSION

### A.  Claim and Issue Preclusion

        A threshold question is whether Nunnally's prior case in the District of Columbia

courts has claim or issue preclusion consequences for her claims here.  See generally Nunnally v.

Graham, 56 A.3d 130 (D.C. 2012).  Magistrate Judge Robinson could not "determine which

claims were resolved by the jury in the Superior Court action."  R&R at 16-17.  But even if she

had been able to do so, she said she would have found no issue or claim preclusion because the

Superior Court action focused only on Graham's conduct during 2003-04, while the present case

does "not share the same nucleus of facts" and focuses on "other employees of MPD, from 2004

through 2009."  Id. at 18.  Magistrate Judge Robinson did not evaluate the preclusive effect of

the Superior Court's ruling on a District of Columbia motion in limine because "the court's order

was in the form of an oral ruling . . . and neither party has offered the transcript as an exhibit." Id. at 19 n.7.

The doctrine of claim preclusion "holds that a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action." Apotex, Inc. v. FDA, 393 F.3d 210, 217 (D.C. Cir. 2004). "The District of Columbia, like the majority of jurisdictions, has adopted the Second Restatement's transactional approach under which a cause of action, for purposes of claim preclusion, comprises all rights of the plaintiff to remedies against [the defendant] with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Stanton v. District of Columbia Court of Appeals, 127 F.3d 72, 78 (D.C. Cir. 1997) (citations and internal quotation marks omitted). Whether two claims are the same "'turns on whether they share the same nucleus of facts.'" Nat'l Res. Def. Council v. EPA, 513 F.3d 257, 261 (D.C. Cir. 2008) (quoting Apotex, Inc. v. FDA, 393 F.3d at 217).

Likewise, the doctrine of issue preclusion or collateral estoppel commands that "'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" United States v. All Assets Held at Bank Julius, --- F. Supp. 3d ----, 2017 WL 90658, at *7 (D.D.C. Jan. 10, 2017) (quoting Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992)). "Issue preclusion applies if three conditions are met: 'First, the issue must have been actually litigated, that is, contested by the parties and submitted for determination by the court. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in the first . . . [case]. Third, preclusion in the

second . . . [case] must not work an unfairness.'" Id. (quoting Otherson v. Dep't of Justice, 711 F.2d 267, 273 (D.C. Cir. 1983)).

    The Court agrees with Magistrate Judge Robinson's analysis of both claim and issue preclusion and therefore overrules the District of Columbia's Objection to the contrary. The record simply does not indicate what claims Nunnally put before the jury in her Superior Court trial.  Nor is there any evidence in the record concerning what evidence the Superior Court excluded in limine.  It therefore is not possible for the Court to determine (1) whether the causes of action in the Superior Court action overlap with this case, or (2) whether Nunnally actually litigated those causes of action in the Superior Court action.  Even if the record did contain this evidence, Magistrate Judge Robinson is correct that the present suit concerns different subject matter — retaliation versus sexual harassment — and a different period of time — 2004-09 versus 2003-04.  The Court therefore finds no claim or issue preclusion in this case based on Nunnally's Superior Court action.

*B.  Title VII and DCHRA Claims*

    Both parties object to Magistrate Judge Robinson's resolution of the ultimate issue of whether summary judgment is warranted with respect to Nunnally's theories of liability under Title VII and the DCHRA.[4]

---

    [4]    Magistrate Judge Robinson refused to consider several arguments concerning Nunnally's Title VII and DCHRA claims that the District of Columbia raised for the first time in its reply brief, Dkt. 115.  R&R at 20-21.  The District of Columbia objects that it made new arguments because it could not "pin down Nunnally's byzantine accusations."  Def. Obj. at 18-19 [Dkt. 130].  The Court sees no reason to deviate from the normal rule, applied by Magistrate Judge Robinson here, that "an argument first made in a reply brief is forfeited." Bartko v. SEC, 845 F.3d 1217, 1224 (D.C. Cir. 2017).

    As discussed, the Court traces 10 of Nunnally's 12 alleged adverse employment actions back to the text of her Fourth Amended Complaint, so they can hardly be viewed as

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Baumann v. District of Columbia, 795 F.3d 209, 215 (D.C. Cir. 2015); FED. R. CIV. P. 56(a), (c).  In making that determination, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.  Baumann v. District of Columbia, 795 F.3d at 215; see Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (per curiam); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011).  A disputed fact is "material" if it "might affect the outcome of the suit under the governing law."  Talavera v. Shah, 638 F.3d at 308 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  A dispute over a material fact is "genuine" if it could lead a reasonable jury to return a verdict in favor of the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Grimes v. District of Columbia, 794 F.3d 83, 94-95 (D.C. Cir. 2015); Paige v. DEA, 665 F.3d 1355, 1358 (D.C. Cir. 2012).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment.  Thus, [the court does] not determine the truth of the matter, but instead decide[s] only whether there is a genuine issue for trial."  Barnett v. PA Consulting Grp., Inc., 715 F.3d 354, 358 (D.C. Cir. 2013) (quoting Pardo-Kronemann v. Donovan, 601 F.3d 599, 604 (D.C. Cir. 2010)); see also

---

"byzantine" or difficult to decipher.  See supra at 3-4.  The District of Columbia's new arguments in its reply brief do not concern the remaining two adverse employment actions: (1) her forced retirement on disability in June 2009, and (2) MPD advising prospective employers after June 2009 that it had fired her.  The Court therefore overrules the District of Columbia's Objection.

Tolan v. Cotton, 134 S. Ct. at 1866; Baumann v. District of Columbia, 795 F.3d at 215; Allen v.

Johnson, 795 F.3d 34, 38 (D.C. Cir. 2015).

        Title VII's anti-retaliation provision makes it unlawful for "an employer [to]

'discriminate against' an employee . . . because that individual 'opposed any practice' made

unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII

proceeding or investigation." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56

(2006) (quoting 42 U.S.C. § 2000e-3(a)). The DCHRA similarly prohibits "retaliat[ion] against

. . . any person in the exercise or enjoyment of, or on account of having exercised or enjoyed . . .

any right granted or protected under this chapter." D.C. CODE § 2-1402.61(a) (2012 Repl.).

"The elements of a retaliat[ion] claim are the same under [the] DCHRA as under the federal

employment discrimination laws." Allen-Brown v. District of Columbia, 174 F. Supp. 3d 463,

481 (D.D.C. 2016) (internal quotation marks omitted). "[F]ederal case law addressing questions

arising in Title VII cases is applicable to the resolution of analogous issues raised regarding

DCHRA claims." Ali v. District of Columbia, 697 F. Supp. 2d 88, 92 n.6 (D.D.C. 2010) (citing

Howard Univ. v. Green, 652 A.2d 41, 45 n.3 (D.C. 1994)); see also Gaujacq v. EDF, Inc., 601

F.3d 565, 576-77 (D.C. Cir. 2010); Whitbeck v. Vital Signs, Inc., 116 F.3d 588, 591 (D.C. Cir.

1997) ("District of Columbia courts interpreting the DCHRA 'have generally looked [for

guidance] to cases from the federal courts' arising under federal civil rights statutes." (quoting

Benefits Communication Corp. v. Klieforth, 642 A.2d 1299, 1301-02 (D.C. 1994))).

        "A plaintiff may prove her Title VII discrimination or retaliation claim with direct

evidence, for example through a statement that itself shows racial bias in the employment

decision. Alternatively, a plaintiff may base her claim on circumstantial evidence under the

familiar McDonnell Douglas burden-shifting framework." Nurriddin v. Bolden, 818 F.3d 751,

758 (D.C. Cir. 2016).  Here, Nunnally offers no direct evidence, and the Court therefore will analyze Nunnally's Title VII and DCHRA claims under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The McDonnell Douglas burden-shifting framework contains three steps. First, the burden is on the employee to make a prima facie case of retaliation or discrimination. 411 U.S. at 801-02.  "To establish a prima facie case of retaliation based on circumstantial evidence, a plaintiff must show that (1) '[s]he engaged in statutorily protected activity'; (2) '[s]he suffered a materially adverse action by h[er] employer'; and (3) 'a causal link connects the two.'"  Doak v. Johnson, 798 F.3d 1096, 1107 (D.C. Cir. 2015) (quoting Solomon v. Vilsack, 763 F.3d 1, 14 (D.C. Cir. 2014)).

Second, if the employee makes out a prima facie case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the challenged action.  Morris v. McCarthy, 825 F.3d 658, 668 (D.C. Cir. 2016).  Third, if the employer does so, the McDonnell Douglas burden-shifting analysis "falls away," id., and "the district court must resolve one central question:  Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted [non-retaliatory] reason" for its adverse employment action "was not the actual reason and that the employer intentionally [retaliated] against the employee" on the basis of the employee having engaged in a statutorily protected activity?  Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008); see also Gaujacq v. EDF, Inc., 601 F.3d at 576.  "The employee can survive summary judgment by providing enough evidence for a reasonable jury to find that the employer's proffered explanation" for an adverse employment action "was a pretext for retaliation or discrimination."  Morris v. McCarthy, 825 F.3d at 668; see Nurriddin v. Bolden, 818 F.3d at 758-59.

1. Prima Facie Case For Delays in Nunnally's Workers'
Compensation and Retirement Board Hearings

Magistrate Judge Robinson held that Nunnally had failed to allege a prima facie case of retaliation under step one of McDonnell Douglas with respect to the asserted delay of her workers' compensation and retirement board hearings because Nunnally did not adduce facts showing that the cause for the delays of her hearings between May 2007 and July 2008 was her protected activity.  R&R at 21-23.  Nunnally objects that she engaged in protected activity throughout this period sufficient to establish causation.  Pl. Obj. at 6-7 [Dkt. 131].

To demonstrate causation in a Title VII or DCHRA case, "traditional principles of but-for causation" apply, and a plaintiff must show "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).  "A plaintiff may establish a causal connection between his participation in a protected activity and an adverse action through temporal proximity alone by showing that (1) the employer knew that the plaintiff engaged in protected activity, and that (2) the adverse action took place shortly after plaintiff's participation in that activity."  Moses v. Howard Univ. Hosp., 474 F. Supp. 2d 117, 124 (D.D.C. 2007) (citing Holcomb v. Powell, 433 F.3d 889, 903 (D.C. Cir. 2006)).  But "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close."  Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam) (internal quotation marks omitted).  The D.C. Circuit has held that ten months, see McCormick v. District of Columbia, 752 F.3d 980, 986 (D.C. Cir. 2014), eight months, see Payne v. District of Columbia, 722 F.3d 345, 354 (D.C. Cir. 2013), and two and a

12

half months, see Taylor v. Solis, 571 F.3d 1313, 1322 (D.C. Cir. 2009), were not close enough for temporal proximity.

Here, the delays, cancellations, or abrupt changes in Nunnally's retirement and workers' compensation proceedings occurred in May 2007, July 2007, February 2008, and July 2008.  Am. Compl. ¶¶ 66, 64, 68.  Those dates overlap with Nunnally's acts of emailing supervisors, filing internal complaints with MPD, and contacting her elected representatives about the alleged retaliation and hostile work environment.  Pl. SMF ¶¶ 97, 106-116 (citing complaints in January, July, August, and October of 2007, and April, June, September, October, and December of 2008).  The District of Columbia offers no contrary evidence.  The Court concludes that Nunnally has demonstrated sufficient temporal proximity to permit a jury to consider whether there was a causal link between her protected activity and these adverse employment actions.  It therefore will sustain Nunnally's Objection to Magistrate Judge's Robinson's R&R with respect to this claim.  The District of Columbia is not entitled to summary judgment on Nunnally's theory of Title VII and DCHRA liability concerning delays in her workers' compensation and retirement board hearings.

### 2.  Step Three of McDonnell Douglas for All of Nunnally's Other Alleged Adverse Employment Actions

For all of Nunnally's other alleged adverse employment actions, the District of Columbia does not dispute that Nunnally has successfully alleged a prima facie claim of retaliation under Title VII or the DCHRA.  See Def's. Obj. at 16-18 [Dkt. 130].  The District of Columbia agrees that Nunnally engaged in protected activity when she made various complaints and suffered each of the 12 adverse employment actions the Court has identified.  See supra at

3-4.[5]  Nor does it argue a lack of sufficient temporal proximity with respect to 11 of them.  The

District of Columbia maintains, however, that it had a legitimate, nondiscriminatory reason for

taking adverse employment actions against Nunnally:  "a pending sexual harassment claim filed

by one of her subordinates against her."  Defs. MSJ at Ex. G, ¶ 8 [Dkt. 98-3 at 85]; see also Def.

Obj. at 17 [Dkt. 130].  It is established that complaints from "other employees [] that they had

been sexually harassed by the Plaintiff . . . are certainly non-discriminatory and legitimate

reasons for terminating an individual's employment," or taking other adverse employment

actions against her.  Regan v. Grill Concepts-D.C., Inc., 338 F. Supp. 2d 131, 138-39 (D.D.C.

2004).

As discussed previously, see supra at 10-11, "where an employee has suffered an

adverse employment action and an employer has asserted a legitimate, [non-retaliatory] reason

for the decision, the district court need not — and should not — decide whether the plaintiff

actually made out a prima facie case under McDonnell Douglas."  Brady v. Office of Sergeant at

Arms, 520 F.3d at 494 (emphasis in original).  The question in this case therefore concerns step

three of McDonnell Douglas:  Viewing the evidence in the light most favorable to Nunnally,

would her evidence allow a reasonable jury to conclude that the District of Columbia's proffered

reason for the 12 adverse employment actions was not the actual reason for those actions and that

the District of Columbia retaliated against her on the basis of her protected activity?

The Court agrees with Magistrate Judge Robinson that summary judgment for the

District of Columbia is warranted with respect to Nunnally being required to report to the First

District weekly while on sick leave in January 2007.  R&R at 21-23.  The District of Columbia

---

[5]        It may be more accurate to say that the District of Columbia does not dispute the
factual basis for any of Nunnally's 12 alleged adverse employment actions.  See supra note 2.

attached to its motion for summary judgment examples of sign-in sheets showing a number of employees in addition to Nunnally who were required to report to the First District while on sick leave.  Def. MSJ at Ex. H [Dkt. 98-3].  Faced with that evidence, a reasonable jury could not "infer that the [sick leave sign-in] policy was selectively enforced against [Nunnally] in retaliation for her protected activity."  R&R at 23.  The Court therefore overrules Nunnally's Objection to the contrary, see Pl. Obj. at 3-4, and grants summary judgment to the District of Columbia on Nunnally's claim that it was retaliation to require her to report to the First District weekly while on sick leave in January 2007.

As for each of Nunnally's other alleged adverse employment actions, the Court overrules the District of Columbia's Objection to Magistrate Judge Robinson's decision to permit Nunnally to proceed to trial.  See Def. Obj. at 16-18.  The District of Columbia does not provide individualized reasons for why it treated Nunnally the way it did in each of those circumstances.  See supra note 2.  Rather, it argues that those adverse employment actions "do not evidence [retaliation]" under step three of McDonnell Douglas because "they call into question how the District made decisions about the reorganization" of MPD.  Id. at 18.  The Court understands this to be essentially an argument that the Court should not look behind the District of Columbia's business judgment:  "As courts are not free to second-guess an employer's business judgment, a plaintiff's mere speculations are insufficient to create a genuine issue of fact regarding an employer's articulated reasons for its decisions and avoid summary judgment."  Brown v. Brody, 199 F.3d 446, 458-59 (D.C. Cir. 1999) (internal quotation marks omitted), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).  While claims based on speculation do not create issues requiring a trial, "the business judgment rule does not compel the award of summary judgment" where a plaintiff's evidence

raises genuine issues of material fact that the Court cannot decide as a matter of law.  Cf.

Armenian Assembly of Am., Inc. v. Cafesjian, 692 F. Supp. 2d 20, 39 (D.D.C. 2010), aff'd, 758

F.3d 265 (D.C. Cir. 2014).

        Here, the Court finds much more than mere speculation from which a reasonable

jury could find that the District of Columbia's proffered explanation for the adverse employment

actions was not the true explanation.  To take just one example, the evidence shows that when

Nunnally filed a harassment complaint against her supervisor in 2004, she was reassigned to the

Major Narcotics Division, but when her subordinate filed a similar complaint against Nunnally,

it was Nunnally who was reassigned.  Pls. SMF ¶ 36; Memorandum in Support of MSJ at 10.[6]

Viewed in the light most favorable to Nunnally, the Court believes that a reasonable jury could

find that this disparate response shows that the District of Columbia's purported non-retaliatory

reason for reassigning Nunnally was a pretext for retaliation.  The purported business judgment

of the District of Columbia therefore does not warrant summary judgment.

        The Court therefore agrees with Magistrate Judge Robinson's recommendation to

deny summary judgment to the District of Columbia on Nunnally's Title VII and DCHRA claims

with respect to most of her alleged adverse employment actions.  The District of Columbia is

entitled to summary judgment on her claim that Nunnally was required to report to the First

District weekly while on sick leave in January 2007 in retaliation for protected activity, but

Nunnally may proceed to trial on all other remaining adverse employment actions.  The Court

---

     [6]     The Court is aware that Nunnally did not raise this differential treatment argument until her opposition to the District of Columbia's Objections.  Opp. of Def. Obj. at 15 [Dkt. 134]. The evidence underlying this argument was present in the record before Magistrate Judge Robinson, however.  Given the Court's de novo standard of review of a magistrate judge's R&R on a summary judgment motion, see supra at 5-6, the Court finds it appropriate to apply the hornbook principle that appellate courts "may affirm the district court on any ground supported by the record."  Chambers v. Burwell, 824 F.3d 141, 143 (D.C. Cir. 2016).

overrules the District of Columbia's Objection and sustains in part and overrules in part
Nunnally's Objection.

### C.  DCWPA Claim

The Court agrees with Magistrate Judge Robinson's recommendation that much
of the District of Columbia's summary judgment motion with respect to Nunnally's DCWPA
claim should be denied and that the claim should proceed to trial.  The Court will address in turn
(1) the District of Columbia's Objection to Magistrate Judge Robinson's analysis of the DCWPA
statute of limitations, and (2) both parties' Objections to Magistrate Judge Robinson's analysis of
the causal connection between Nunnally's protected disclosures and the retaliation she allegedly
suffered.

### 1.  DCWPA Statute of Limitations

The District of Columbia objects to Magistrate Judge Robinson's analysis of the
2010 amendments to the DCWPA's statute of limitations.  Def. Objections at 22-23 [Dkt. 130].
The gravamen of the District of Columbia's Objection is that Nunnally's DCWPA claims are
time barred even under the 2010 amendment to the DCWPA's statute of limitations for unknown
violations because Nunnally was aware of her claims at the time of the alleged retaliatory
conduct.  Id.[7]  The Court will overrule the District of Columbia's Objection with respect to the
statute of limitations analysis.

Under the 2010 amendments to the DCWPA's statute of limitations in D.C. CODE
§ 1-615.54(a)(2) (2012 Repl.), a DCWPA action is timely if instituted "within 3 years after a

---

[7]     Neither party objects to Magistrate Judge Robinson's conclusion that the pre-2010
notice requirement contained in D.C. CODE § 12-309 (2012 Repl.) is inapplicable to Nunnally's
DCWPA claim.  The Court agrees with Magistrate Judge Robinson on this point.

violation occurs" or "within one year after the employee first became aware of the violation," whichever occurs first.  D.C. CODE § 1-615.54(a)(2).  While the District of Columbia Court of Appeals has never squarely addressed whether the 2010 amendment to the DCWPA statute of limitations is retroactive, the District of Columbia Superior Court has held at least twice that it is retroactive, and Judge Gladys Kessler of this Court, collecting those cases, has agreed.  Sharma v. District of Columbia, 791 F. Supp. 2d 207, 212-13 (D.D.C. 2011).  Judge Kessler concluded that, "[i]n line with applicable D.C. law, this Court holds that the 2010 Amendments to the DCWPA's statute of limitations . . . are procedural and therefore retroactive."  Id. at 214.  The Court agrees with Judge Kessler's retroactivity analysis.

A violation of the DCWPA occurs when a plaintiff suffers retaliation as a result of "protected disclosures," Freeman v. District of Columbia, 60 A.3d 1131, 1141 (D.C. 2012), and a plaintiff must file a claim under the Act within one year after she first becomes aware of the violation.  D.C. CODE § 1-615.54(a)(2).  Nunnally filed her Second Amended Complaint on May 7, 2009, see Dkt. 22, and sought leave to file her Fourth Amended Complaint to add the DCWPA claim on November 5, 2010.  See Dkt. 49.  Magistrate Judge Robinson found that Nunnally's theory of DCWPA liability concerning "disclosures related to MPD's alleged treatment of [her] during her employment" after May 7, 2008, was timely because those claims related back to Nunnally's Second Amended Complaint.  By contrast, Magistrate Judge Robinson held that Nunnally's DCWPA claims concerning "disclosures related to other alleged misconduct unrelated to [her] employment at MPD" were untimely because those disclosures did not relate back to her Second Amended Complaint.  R&R at 27-28.  As a result, under Magistrate Judge Robinson's analysis, Nunnally's DCWPA claim is limited to adverse employment actions 8, 10, 11, and 12.  See supra at 3-4.

The Court agrees with Magistrate Judge Robinson.  Nunnally filed her Second Amended Complaint on May 7, 2009, and fully described therein the retaliation for protected disclosures she made about MPD's treatment of her individually.  See Dkt. 22 ¶¶ 9, 12-16, 27. As such — under D.C. CODE § 1-615.54(a)(2)'s one-year statute of limitations for known violations — Nunnally's DCWPA claim is timely as to retaliation occurring after May 7, 2008, based on her protected disclosures about MPD's treatment of her individually because that retaliation related back to Nunnally's Second Amended Complaint that she filed on May 7, 2009. See Dkt. 22.  But Nunnally's Second Amended Complaint is silent regarding retaliation for protected disclosures she made about MPD's "unethical activities" and "pervasive retaliation" unrelated to her, which first appear in her Fourth Amended Complaint.  See Am. Compl. ¶¶ 87-88.  Nunnally therefore has no timely DCWPA claims based on her protected disclosures about MPD's "unethical activities" and "pervasive retaliation" unrelated to her because those allegations do not relate back.

## 2.  DCWPA Merits

The parties both lodged Objections as to whether Nunnally has shown a causal connection between her protected disclosures and the instances of retaliation (or adverse employment actions) alleged in her complaint.  Def. Obj. at 23; Pl. Obj. at 7-9.  Specifically, the District of Columbia argues that Nunnally has shown no causation at all, see Def. Obj. at 23, while Nunnally objects that she has shown causation for every instance of retaliation, even those for which Magistrate Judge Robinson recommended granting summary judgment to the District of Columbia.  Pl. Obj. at 7-9.

The DCWPA, D.C. CODE § 1-615.51 et seq. (2012 Repl.), provides that "[a] supervisor shall not take, or threaten to take, a prohibited personnel action or otherwise retaliate

against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order."  Id. § 1-615.53(a); see also Baumann v. District of Columbia, 795 F.3d at 219-20.  "To make out a prima facie claim of retaliation under the [DCWPA], the plaintiff must show by a preponderance of the evidence that (i) she made a statutorily protected disclosure, and (ii) the disclosure was a 'contributing factor' behind (iii) an adverse personnel action taken by her employer."  Coleman v. District of Columbia, 794 F.3d 49, 54 (D.C. Cir. 2015) (internal citation omitted); see also Freeman v. District of Columbia, 60 A.3d at 1141.  The DCWPA defines a "contributing factor" as "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the [employment] decision."  D.C. CODE § 1-615.52(a)(2).  Courts have found gaps of eight months, Payne v. District of Columbia, 722 F.3d 345, 354 (D.C. Cir. 2013), and four months, Johnson v. District of Columbia, 935 A.2d 1113, 1120 (D.C. 2007), between the protected disclosures and the adverse personnel action insufficient to meet the "contributing factor" prong.  In addition, "[w]ithout evidence, circumstantial or otherwise, that 'the decision-maker[] responsible for the adverse action had actual knowledge of the protected activity,' [a plaintiff] has failed to create a disputed fact question about whether the decision was retaliatory."  Coleman v. District of Columbia, 794 F.3d at 64 (quoting McFarland v. George Washington Univ., 935 A.2d 337, 357 (D.C. 2007)).

The Court need not assess whether Nunnally's protected disclosures were a contributing factor to any retaliation she suffered before May 7, 2008, because those instances of retaliation are time-barred under D.C. CODE § 1-615.54(a)(2).  See supra at 17-19.  That leaves four alleged instances of retaliation:  (1) the denial of her sick, annual, and family medical leave between 2007 and 2009; (2) the delay of her workers' compensation and retirement board

hearings between May 2007 and July 2008; (3) her forced retirement on disability in June 2009; and (4) MPD advising prospective employers after June 2009 that it had fired Nunnally.  See supra at 3-4.  The relevant questions for these remaining instances of retaliation are:  (1) whether there was sufficient temporal proximity between Nunnally's protected disclosures and the adverse employment actions to consider the disclosures a "contributing factor"; and (2) whether the persons allegedly engaged in retaliation knew about the protected disclosures.

The Court concludes that Nunnally has not sufficiently shown temporal proximity for her allegation that the District of Columbia denied her leave requests.  Nunnally offers only the general statement that Commander Groomes's denied her leave requests "repeatedly" over a two-year period, and she does not provide any direct evidence that Groomes was aware of her protected disclosures.  Pl. SMF ¶ 121; see also Am. Compl. ¶ 78.  As to each of the remaining three instances of alleged retaliation, however, the Court finds that the adverse employment actions were taken sufficiently close in time to Nunnally's protected disclosures that a jury could find the protected disclosures to be a contributing factor.  Nunnally's allegation that the District of Columbia abruptly delayed her retirement hearing in July 2008, see Am Compl. ¶ 68, is one month after Nunnally's letters to the D.C. Inspector General and City Councilmember Mary M. Cheh, as well as one month after the period in which Nunnally began blogging about the retaliation.  Id. ¶¶ 71-72, 75.[8]  The final two instances of retaliation in June 2009 — forced retirement and advising prospective employers that Nunnally had been fired — allegedly occurred during the same month that Nunnally testified before the D.C. Council concerning "pervasive corruption within the police department."  Am. Compl. ¶ 77.  With respect to whether

---

[8]	In the context of Nunnally's Title VII and DCHRA claims, the Court explained that the delays, cancellations, or abrupt changes in Nunnally's retirement and workers' compensation proceedings overlapped with Nunnally's protected activity.  See supra at 13.

Nunnally's supervisors knew about her protected disclosures, she alleges — and the District of Columbia does not dispute — that MPD Internal Affairs, the Office of Inspector General, and Nunnally's direct supervisor were all aware of her internal affairs complaints, blog entries, and letters to elected officials.  Pl. SMF ¶¶ 111, 120, 122, 126.  The Court therefore is satisfied that there are genuine issues of material fact such that Nunnally may proceed to trial concerning three instances of retaliation under the DCWPA:  (1) the delay of her workers' compensation and retirement board hearings between May 2007 and July 2008; (2) her forced retirement on disability in June 2009; and (3) MPD advising prospective employers after June 2009 that it had fired Nunnally.

The Court overrules the District of Columbia's Objection and overrules in part and sustains in part Nunnally's Objections concerning causation for Nunnally's various theories of DCWPA liability.

### D.  Sanctions

Finally, the District of Columbia objects that an adverse inference sanction is not warranted.  Def. Obj. at 23-24.  It contends that Nunnally has failed to demonstrate that the District of Columbia lost, altered, or destroyed relevant evidence, or that the missing emails were relevant to Nunnally's claims.  Id. at 25-27.[9]  The Court reviews Magistrate Judge Robinson's factual findings concerning sanctions for clear error, but reviews her legal conclusion that those facts warrant the sanction of an adverse inference at trial de novo.  See supra at 5-6.

Rule 37(b) of the Federal Rules of Civil Procedure authorizes federal district courts to impose sanctions when a party fails to obey a discovery order.  FED. R. CIV. P. 37(b).

_____

[9]  Nunnally does not object to Magistrate Judge Robinson's conclusion that MPD's spoliation of evidence did not warrant the sanction of default judgment.

Magistrate Judge Robinson determined that spoliation, and not noncompliance with any particular discovery order, was the basis for Nunnally's requested sanction and that Rule 37(b) therefore did not apply.  R&R at 33.  In such situations, however, "a court may issue appropriate sanctions under its inherent power."  3E Mobile, LLC v. Glob. Cellular, Inc., --- F. Supp. 3d ----, 2016 WL 7408830, at *2 (D.D.C. Dec. 22, 2016) (citing Shepherd v. Am. Broad. Cos., Inc., 62 F.3d 1469, 1474 (D.C. Cir. 1995)).[10]  Such sanctions include "adverse findings of fact, considering an issue established for the purpose of the action[, or] adverse inferences."  Id. at *3.  An adverse inference is "fundamentally remedial rather than punitive" and can be imposed "whenever a preponderance of the evidence establishes that a party's misconduct has tainted the evidentiary resolution of the issue."  Shepherd v. Am. Broad. Cos., Inc., 62 F.3d at 1478.

Here, the District of Columbia's alleged misconduct was "spoliation" of evidence, defined as "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  D'Onofrio v. SFX Sports Grp., Inc., No. 06-0687, 2010 WL 3324964, at *5 n.5 (D.D.C. Aug. 24, 2010) (internal quotation marks omitted).  "A party has a duty to preserve potentially relevant evidence . . . once [that party] anticipates litigation."  Zhi Chen v. District of Columbia, 839 F. Supp. 2d 7, 12 (D.D.C. 2011) (internal quotation marks omitted).  "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a

---

[10]     Rule 37 of the Federal Rules of Civil Procedure was amended in December 2015 to explicitly provide for sanctions for failure to preserve electronically stored information even in the absence of a specific court order.  See Fed. R. Civ. P. 37(e).  "It authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures.  It therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used."  Fed. R. Civ. P. 37 Advisory Comm. Notes; see also Alabama Aircraft Indus., Inc. v. Boeing Co., No. 11-03577, 2017 WL 930597, at *7-16 (N.D. Ala. Mar. 9, 2017) (offering a detailing analysis of the 2015 amendments to Rule 37(e) as applied to electronically stored information including emails).

'litigation hold' to ensure the preservation of relevant documents." <u>Zubulake v. UBS Warburg</u> <u>LLC</u>, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).  "That obligation runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction." <u>Zhi Chen v. District of Columbia</u>, 839 F. Supp. 2d at 12 (internal quotation marks omitted).

   "The sanctions available for the destruction of documents or evidence with notice of their potential usefulness in litigation may include the assessment of fines or attorneys' fees and costs, the preclusion of certain lines of argument that might have been advanced by the culpable party, and/or the issuance of an instruction informing jurors that they may draw an adverse inference from the spoliator's actions." <u>Zhi Chen v. District of Columbia</u>, 839 F. Supp. 2d at 12.  "When selecting the appropriate sanction, the Court must properly calibrate the scales to ensure that the gravity of an inherent power sanction corresponds to the misconduct." <u>Davis</u> <u>v. District of Columbia Child & Family Servs. Agency</u>, 304 F.R.D. 51, 60 (D.D.C. 2014) (internal quotation marks omitted).  The choice of an appropriate sanction is "necessarily a highly fact-based determination based on the course of the discovery process leading up to the sanction." <u>Bonds v. District of Columbia</u>, 93 F.3d 801, 804 (D.C. Cir. 1996).  A court's use of its power to sanction misconduct "should reflect our judicial system's strong presumption in favor of adjudication on the merits." <u>Shepherd v. Am. Broad. Cos., Inc.</u>, 62 F.3d at 1475.

   Here, Magistrate Judge Robinson did not clearly err in finding that the District of Columbia failed to preserve potentially relevant email records and that MPD understood that it had a duty to do so in anticipation of this litigation.  The District of Columbia concedes that it had a duty to preserve documents associated with this litigation.  <u>See</u> Opp. to Sanctions Motion at 3; Def. Obj. at 25.  Magistrate Judge Robinson therefore appropriately found that Nunnally

sufficiently demonstrated that the District of Columbia failed to produce records of correspondence that would have been responsive to her discovery requests.  R&R at 37.  Further, the District of Columbia's Objections themselves still offer no explanation for why it did not preserve those emails.  See Def. Obj. at 25-26.  In light of the District of Columbia's admitted duty to preserve emails and its failure to offer any explanation for its failure to preserve them, as well as Nunnally's own production of responsive emails that the District of Columbia could have preserved but did not, the Court sees no error — let alone clear error — in Magistrate Judge Robinson's conclusion that the District of Columbia acted negligently, warranting as a sanction an adverse inference instruction at trial.

The District of Columbia's Objection that Nunnally failed to show that the missing emails are relevant is without merit.  Def. Obj. at 26-27.  "[I]n situations where the document destruction has made it more difficult for a party to prove that the documents destroyed were relevant, the burden on the party seeking the adverse inference is lower, and the trier of fact may draw such an inference based even on a very slight showing that the documents are relevant."  Gerlich v. U.S. Dep't of Justice, 711 F. 3d. 161, 172 (D.C. Cir. 2013) (internal quotation marks omitted).  The Court finds that Magistrate Judge Robinson did not clearly err in concluding that the District of Columbia's missing emails were relevant to causation because they "may demonstrate who knew about [Nunnally's] protected activities."  R&R at 39.  The Court therefore overrules the District of Columbia's Objection to the contrary.  The Court will decide the exact form of the adverse inference at the time of trial and not on summary judgment.

IV.  CONCLUSION

For the reasons set forth in this Opinion, the Court will affirm in part and reverse in part Magistrate Judge Robinson's R&R, grant in part and deny in part the District of Columbia's motion for summary judgment, and grant in part and deny in part Nunnally's motion for sanctions.  An Order consistent with this Opinion shall issue this same day.

SO ORDERED.


/s/
_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  March 22, 2017